**PETERSON WATTS LAW GROUP, LLP**
GLENN W. PETERSON, ESQ. (SBN 126173)
ROBERT K. ASHLEY, ESQ. (SBN 306441)
2267 Lava Ridge Court, Suite 210
Roseville, CA 95661
Telephone: (916) 780-8222
Fax No: (916) 780-8775

Attorneys for Plaintiff,
*Sourdough & Co., Inc.*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOURDOUGH & CO., INC.<br><br>Plaintiff,<br><br>v.<br><br>WCSD, INC., a California corporation; GSD FOODS, INC., a California corporation; GURMINDER BHATIA, an individual; DAVINDER SINGH, an individual; POWERGLIDE HOLDINGS, LLC, a California limited liability company; KALDEEP UPPAL, an individual; KARNDEEP UPPAL, an individual; and SD-FOLSOM, INC., a California corporation; and DOES 1-25,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR TRADEMARK INFRINGMENT AND RELATED CLAIMS**<br><br>JURY DEMAND |

Plaintiff, Sourdough & Co., Inc. (hereinafter "Plaintiff"), by and through its undersigned counsel, hereby complains against the above-mentioned defendants, and each of them (hereinafter "Defendants"), as follows.

## **PARTIES**

1.    Plaintiff is a California corporation, doing business under the service mark and trade name SOURDOUGH & CO., with its principal place of business in El Dorado County, California.

2. Upon information and belief, Defendant WCSD, Inc. ("WCSD") is a California corporation with its principal business office in Roseville.

3. Upon information and belief, Defendant GSD Foods, Inc. ("GSD Foods") is a California corporation with its principal place of business in Sacramento.

4. Upon information and belief, Defendant Gurminder Bhatia is an individual resident of Sacramento and controls, or has the ability to control the conduct of GSD Foods and WCSD and is otherwise responsible for the infringing conduct of said companies as hereinafter alleged.

5. Upon information and belief, Defendant Powerglide Holdings, LLC ("Powerglide") is a California limited liability company with its principal place of business in Sacramento.

6. Upon information and belief, Defendant Davinder Singh is an individual resident of Sacramento and controls, or has the ability to control the conduct of Powerglide and is otherwise responsible for the infringing conduct of said company as hereinafter alleged.

7. Upon information and belief, SD-Folsom, Inc. ("SD-Folsom") is a California corporation with its principal place of business in Sacramento.

8. Upon information and belief, Defendants Karndeep Uppal and Kaldeep Uppal are individual residents of Sacramento and control, or have the ability to control the conduct of SD-Folsom and are otherwise responsible for the infringing conduct of the company as hereinafter alleged.

9. Upon information and belief, Defendant DOES 1-25 are individuals or business entities, and/or corporate officers conducting the actions of Defendant or otherwise complicit with Defendants. Hereinafter, each of the foregoing named defendants, including the "Doe" defendants shall be collectively referred to as "Defendants".

## JURISDICTION AND VENUE

10. This is an action for trademark infringement, unfair competition and false designation of origin/false advertising under the Lanham Act, 15 U.S.C. §1125, and pendent claims under state law. This Court has subject matter jurisdiction over the matters complained of under 28 U.S.C. §1331, §1338(a) and §1367.

///

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a), (b) and (c), as one or more Defendants have committed acts of infringement and unfair competition in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated in this district. Moreover, for the reasons more particularly alleged herein below, Defendants' conduct has caused injury and harm to Plaintiff in this judicial district, including substantial instances of public confusion that have arisen here.

## GENERAL ALLEGATIONS

12. Plaintiff, Sourdough & Co., ("Plaintiff") has earned a sterling reputation in the sandwich/deli industry, and has developed strong brand-recognition and the highest caliber customer satisfaction ratings. As more specifically alleged below, Plaintiff owns two federally-registered trademarks for SOURDOUGH & CO. (hereinafter "Marks") and has used the Marks in commerce continuously and without interruption since 2013. The words and design underlying the Marks have already achieved valuable good will and brand recognition, and are widely associated with Plaintiff in the minds of consumers.

13. The Marks are registered as United States Trademark/Service Mark, Registration No. 5,370,126 and No. 5,343,030, on the principal and supplemental Register in the United States Patent and Trademark Office for the trademark/service mark SOURDOUGH & CO. Exhibit "l" hereto contains Plaintiff's certificates of registration.

14. All Defendants except WCSD are former licensees of the Marks by virtue of written license agreements with Plaintiff ("Licensee Defendants"). Early in 2020, the Licensee Defendants terminated their respective license agreements with Plaintiff, in writing.

15. Plaintiff alleges on information and belief that the Licensee Defendants were wrongfully induced to terminate their license agreements by way of tortuous and illegal conduct organized and executed by Defendant Bhatia, who used false and defamatory statements about Plaintiff in order to induce the Licensee Defendants to become licensees of WCSD, or its affiliates, utilizing the name and mark "West Coast Sourdough." The gravamen of the defamatory statements

made was that Plaintiff was operating illegally and would soon be out of business. Such statements were made within the past year.

16. Plaintiff alleges on information and belief that Bhatia offered the Licensee Defendants royalty free use of the West Coast Sourdough mark if they would agree to purchase a forthcoming franchise from WCSD. In doing so, Bhatia and WCSD offered to sell a franchise to the Licensee Defendants before it was legal to do so. Thus, Bhatia's and WCSD's wrongful interference with Plaintiffs contractual relationship with its licensees was accomplished by independently wrongful means; i.e., the use of false and defamatory statements and unlawful solicitations of prospective franchisees in violation of the California Franchise Investment Law.

17. Following termination of their respective Sourdough & Co. license agreements, however, the Licensee Defendants continued to use Plaintiff's Marks without Plaintiff's permission or consent. They continued to use Plaintiff's signage, menus, displays, uniforms and logoware, as shown in the photos contained in Exhibit 2.

18. The Licensee Defendants continued their infringing use of the Marks in complete disregard of Plaintiff's written demands that they cease and desist doing so, and also disregarded Plaintiff's demand that they immediately de-identify their shops as licensed Sourdough & Co. shops by removing all signage, logo items and all other indicia that they are in any way affiliated with Plaintiff.

19. The Licensee Defendants acting at the behest of or otherwise directed by WCSD and Bhatia not only refused to de-identify their shops, they also employed false statements of fact made to Plaintiff's customers and potential customers, intentionally misleading consumers that they were in some way affiliated with or "the same as" Plaintiff. Even the consumer payment interfaces on their POS terminals prominently featured the Marks and provided further false and misleading assurances to customers that they were affiliated with Plaintiff.

20. The Licensee Defendants acting in concert with WCSD, even continued wearing Plaintiff's branded uniforms, which prominently displayed the Marks. While their staff was thus attired, they were falsely telling consumers that they were still affiliated with Plaintiff and that West Coast Sourdough shops and Plaintiff's shops were one and the same. Customers were told, inter

alia, "we use all the same ingredients, and we're basically the same." Staff also told customers in words or substance that the shops may look different, but they are all the same, just under different management.

21.     Plaintiff alleges on information and belief that the Licensee Defendants (acting under the direction of WCSD and Bhatia) also impersonated Plaintiff, posing as Plaintiff's authorized representatives in order to interfere with Plaintiff's customer relationships and relationships with vendors and divert consumers to West Coast shops. One example of these predatory actions involves the Licensee Defendants informing the mobile food delivery service, DoorDash, that Plaintiff's store accounts be changed to West Coast accounts, thus enabling the Defendants to control the accounts instead of Plaintiff, which caused significant business interruption to Plaintiff from the ensuing confusion.

22.     The Licensee Defendants and WCSD have also intentionally created confusion about their affiliation with Plaintiff across social media platforms and consumer review sites. By way of example, they have posted images on West Coast social accounts that contain photos of Plaintiff's Marks, Plaintiff's menus (which display the Marks) and photos of store interiors that prominently show Plaintiffs branded displays, which include the Marks.  Examples are shown in the photos attached as Exhibit 3.

23.     Plaintiff alleges on information and belief that the Licensee Defendants and WCSD are responsible for posting content on line that infringes Plaintiff's Marks and was designed to create and perpetuate consumer confusion about the affiliation between Plaintiff and West Coast Sourdough, when in fact there is no affiliation. Defendants did this with the intention that the West Coast shops would capitalize on Plaintiff's good will and name recognition in order to enhance their transitions as licensees of Plaintiff to licensees of WCSD and do this while intentionally confusing customers that Plaintiff and WCSD were affiliated.

/ / /

/ / /

/ / /

/ / /

24. In early 2020, WCSD created and adopted a mark and related color scheme and subtext that was intended to deceive consumers that the West Coast shops were affiliated with Plaintiff, as shown below:




25. Defendant WCSD has sought federal registrations of the mark ("Accused Mark") shown above, knowing that it was to be used as an article of infringement and predation that would damage Plaintiff's interests by causing deception and confusion among consumers.

26. By employing the exact same color scheme, sub text, trade dress and point-of-sale appearance as used by Plaintiff in conjunction with the Marks, WCSD intended to cause and did in fact cause confusion and deception of consumers by infringing the Marks and using false designations of origin prohibited by the Lanham Act ("Infringing Materials").

27. Plaintiff alleges on information and belief that WCSD then licensed the Infringing Materials to the remaining Defendants and that, in early 2020, Defendants began using in the Infringing Materials interstate commerce, in both virtual and physical forms, to market goods and services that are claimed by them to be identical to those offered by Plaintiff.

28. Plaintiff first became aware of Defendants' infringing conduct in approximately February 2020, after being alerted to instances of public confusion and investigating their origin on line. On March 20, 2020, Plaintiff contacted Defendants through counsel, and demanded that they cease and desist their infringing conduct. Defendants failed to respond, either to dispute what they were accused of or to confirm that they had stopped infringing the Marks.

29. Plaintiff has used the Marks in commerce throughout California and elsewhere in the United States continuously since 2013, in connection with the offering for sale, sale, marketing, advertising and promotion of its sandwich shops. Plaintiff has used the Marks extensively on line,

and its advertising and promotion of the Marks in various on line venues has earned substantial good will and name recognition in the Marks.

30. As a result of its widespread, continuous and exclusive use of the Marks to identify its goods and services and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the Marks and related trade dress used in conjunction with them.

31. Plaintiff's Marks and trade dress are distinctive to both the consuming public and Plaintiff's trade. Plaintiff has expended substantial time, money and resources marketing, advertising and promoting the related goods and services sold under the Marks and trade dress including through Plaintiff's print and internet marketing and advertising.

32. Plaintiff offers and sells its related goods and services under its Marks and trade dress to the general public and is, therefore, vulnerable to the consumer confusion created by Defendants.

33. As a result of Plaintiff's expenditures and efforts, the Marks and trade dress have come to signify the high quality goods and services designated by them, and acquired incalculable distinction, reputation and goodwill belonging exclusively to Plaintiff.

34. Plaintiff has thus suffered actual damages, including lost profits, as a result of Defendants' misconduct in an amount to be proven at trial. Additionally, the harm to Plaintiff arising from Defendants' acts is not fully compensable by money damages. Plaintiff has suffered, and continues to suffer, irreparable harm that has no adequate remedy at law and that will continue unless the infringing conduct by Defendants is preliminarily and permanently enjoined.

## FIRST CLAIM FOR RELIEF

**(Trademark Infringement – 15 U.S.C. §1114(a))**

35. Plaintiff incorporates by this reference each and every preceding allegation as if set forth in full at this point.

36. Defendants' adoption and use in commerce of the Infringing Materials is confusingly similar to the Marks in meaning and overall impression and is similar in appearance and pronunciation. Additionally, the goods/services sold by Defendants in connection with the Infringing Materials are virtually identical to those sold by Plaintiff under the Marks. As such, the Defendants' use of Infringing Materials in connection with its goods/services is likely to cause

confusion, or to cause mistake, or to deceive consumers in light of Plaintiff's trademark. Defendant has thus infringed Plaintiff's trademark rights under the Lanham Act, 15 U.S.C. §1114(a).

37. Plaintiff has suffered actual damages, including lost profits, as a result of Defendants' infringement in an amount to be proven at trial.  Additionally, the harm to Plaintiff arising from Defendants' acts is not fully compensable by money damages.  Plaintiff has suffered, and continues to suffer, irreparable harm that has no adequate remedy at law and that will continue unless the infringing conduct by Defendants is preliminarily and permanently enjoined.  Plaintiff is therefore entitled to both monetary and injunctive relief.

38. Upon information and belief, Defendants were aware of the Plaintiff's Marks and Defendants' unauthorized use of the Infringing Materials was therefore willful, intentional, and/or deliberate as a matter of fact and law.  Plaintiff is therefore entitled to enhanced damages and recovery of its costs and attorneys' fees as permitted under the Lanham Act.

### SECOND CLAIM FOR RELIEF

**(Unfair Competition, False Advertising – 15 U.S.C. §1125(a); Cal. Bus & Prof. §17500)**

39. Plaintiff hereby incorporates by this reference each and every preceding allegation as set forth fully herein.

40. Defendants' use of the Infringing Materials on goods/services virtually identical to Plaintiff's  has caused, and is likely to causing confusion, deception mistake among consumers in light of Plaintiff's use of the Marks, tag lines, color schemes and trade dress.

41. Defendants have therefore engaged in trademark infringement, false advertising and unfair competition under the Lanham Act, 15 U.S.C. §1125(a), and under the common law.

42. Defendants' aforementioned conduct is a further violation of California law, namely, California Business and Professions Code section 17500, which provides:

> **17500.** It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or

otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.  Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

43. By engaging in the foregoing activities, Defendants have engaged in unfair competition as defined by California Bus. & Prof. Code §§17200, et seq. and Defendants' wrongful use of Plaintiff's Marks and violation of the aforementioned laws and regulations represents unfair, deceptive, and misleading advertising in violation of California Bus. & Prof. Code §§17500, et seq.

44. Plaintiff has suffered actual damages, including lost profits, as a result of Defendants' misconduct in an amount to be proven at trial.  Additionally, the harm to Plaintiff arising from Defendants' acts is not fully compensable by money damages.  Plaintiff has suffered, and continues to suffer, irreparable harm that has no adequate remedy at law and that will continue unless the infringing conduct by Defendants are preliminarily and permanently enjoined.  Plaintiff is therefore entitled to both monetary and injunctive relief.

45. Upon information and belief, Defendants were aware of the Plaintiff's Marks and Defendants' unauthorized use of its infringing mark was therefore willful, intentional, and/or deliberate as a matter of fact and law.  Plaintiff is therefore entitled to enhanced damages and of costs and attorneys' fees allowed by law.

### THIRD CLAIM FOR RELIEF

### (False Designation Of Origin, 15 U.S.C. § 1125(a)(1)(A))

46. Plaintiff hereby incorporates by this reference each and every preceding allegation as set forth fully herein.

47. By Defendants' continuing unauthorized use, claim of ownership, and/or offers for sale under the Infringing Materials, and similar derivations thereof, Defendants have used and will continue to use a false designation of origin that is likely to cause confusion, mistake, or deception as to affiliation, connection, or association of Defendants with Plaintiff and is also likely to cause

confusion as to the origin, sponsorship, or approval of Defendants' products, services or commercial activities by Plaintiff, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48. Because of Defendants' aforementioned conduct, Plaintiff has been irreparably harmed in its business enterprises. Moreover, Plaintiff will continue to suffer irreparable harm unless Defendants are restrained from making false designations of origin, false descriptions, or misrepresentations regarding the Defendants' products and/or services, and the actual source(s) thereof.

49. Plaintiff alleges on information and belief that Defendant's continuing infringement is willful and intentional, such that Plaintiff is now entitled to recover the actual damages it has sustained, which exceed $75,000, and is further entitled to an award of enhanced damages for willful infringement, in addition to an award of costs and attorney's fees pursuant to section 35(a) of the Lanham Act. In addition, Plaintiff is entitled to recover Defendants' profits and reasonable royalties as damages.

50. Plaintiff also seeks injunctive relief, sufficient to (1) enjoin Defendant's continuing use of the Infringing Materials and Accused Mark and/or potentially confusing derivations of them; and (2) preclude Defendant from filing Statements of Use, extension requests, or any other documentation with the USPTO calculated to complete or sustain registration of the Accused Mark.

## **FOURTH CLAIM FOR RELIEF**

**(Declaratory Judgment Versus WCSD)**

51. Plaintiff hereby incorporates by this reference each and every preceding allegation as set forth fully herein.

52. Defendant WCSD has claimed ownership of the Accused Mark in its filings with the USPTO and the other public proclamations noted above. Plaintiff disputes these claims and contends that WCSD's use and continuing efforts to register the Accused Mark infringes its senior statutory and common law rights in the Marks, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 & 1125.

53. These facts give rise to an actual controversy and dispute between Plaintiff and Defendant WCSD, for which Plaintiff seeks relief under the Declaratory Judgment Act, 28 U.S.C, §

2201(a) and Rule 57 of the Federal Rules of Civil Procedure; specifically, a judicial declaration that WCSD's use and continuing efforts to register the Accused Mark infringes Plaintiff's rights, and that WCSD and those acting by or through them, be enjoined from filing further documents with the USPTO to complete or sustain registration of the Accused Mark.

## FIFTH CLAIM FOR RELIEF

**(Interference With Economic Advantage Versus All Defendants)**

54. Plaintiff hereby incorporates by this reference each and every preceding allegation as set forth fully herein.

55. Plaintiff is informed and believes and therefore alleges that, with full knowledge of Plaintiff's financially advantageous relationships with its customers and vendors, Defendants interfered with same by engaging in the independently wrongful conduct alleged in paragraphs 17 and 28 above.

56. Defendants conspired and intended, with knowledge of Plaintiff's valuable interests as set forth above, to deprive Plaintiff of its economically advantageous relationships by engaging in the aforementioned acts and conduct.

57. As a proximate result of the conspiracy between and among Defendants, Plaintiff's aforementioned valuable economic relationships have been harmed and/or threatened with harm. Plaintiff has sustained disruption, interference and delay in the valuable relationships identified above. Consequently, Plaintiff has been damaged in a sum according to proof at trial, but in no event less than the jurisdictional minimum of this Court, plus interest as allowed by law.

58. The aforementioned acts were done willfully, maliciously, and fraudulently, and with the intent to injure the Plaintiff. Plaintiff is therefore entitled to exemplary damages against each defendant named in this cause of action in an amount to be determined by the Court, but sufficient to punish and deter said defendants.

## SIXTH CLAIM FOR RELIEF

**(Interference With Contract Versus Defendants WCSD and Bhatia)**

59. Plaintiff hereby incorporates by this reference each and every preceding allegation as set forth fully herein.

**COMPLAINT FOR TRADEMARK INFRINGMENT**

60. Plaintiff is informed and believes and therefore alleges that, with full knowledge of Plaintiff's contractual relationships with its licensees, Defendants WCSD and Bhatia interfered with same by engaging in the independently wrongful conduct alleged in paragraphs 15, 16, 19 and 20-27 above.

61. WCSD and Bhatia utilized this independently wrongful conduct to induce the Licensee Defendants to terminate their contracts with Plaintiff.

62. Defendants WCSD and Bhatia engaged in these acts and conduct for the purpose of interfering with and/or divesting Plaintiff of the valuable contracts with its licensees, and they did so with the specific intent to financially harm Plaintiff and to convert the license contracts to WCSD.

63. As a proximate result of this conduct by said Defendants, Plaintiff's interest in the contracts has been harmed and compromised. Consequently, Plaintiff has been damaged in a sum according to proof at trial, but in no event less than the jurisdictional minimum of this Court, plus interest as allowed by law.

64. The aforementioned acts were done willfully, maliciously, and fraudulently, and with the intent to injure the Plaintiff. Plaintiff is therefore entitled to exemplary damages against each Defendant named in this cause of action in an amount to be determined by the Court, but sufficient to punish and deter said Defendants.

**WHEREFORE**, it is respectfully requested that the Court enter a judgment in favor of Plaintiff as follows:

A. That the Court enter judgment declaring that Defendants' use of the name or mark "West Coast Sourdough," and the Infringing Materials identified above in paragraph 26, and derivations thereof, is likely to cause confusion, deception or mistake with Plaintiff's trademarks and result in trademark infringement in violation of the Lanham Act 15 U.S.C. § 1114(a);

B. That the Court enter judgment that Defendants have falsely designated an origin, affiliation or sponsorship by or with Plaintiff's trademarks under the Lanham Act, 15 U.S.C. §1125(c), and that Defendant be enjoined from completing its registration;

///

///

      C.      That the Court enter judgment that Defendants have competed unfairly pursuant to the Lanham Act, 15 U.S.C. §1125(a), and the common law, and be permanently enjoined from continuing such conduct;

      D.      That the Court enter judgment that Defendants have competed unfairly under Cal. Bus. & Prof. Code §§17200, et seq. and advertised falsely under §§ 17500, et seq., and be permanently enjoined from continuing such conduct;

      E.      That the Court preliminarily and permanently enjoin Defendants from using the Accused Mark, either as a trademark or trade name, and/or other designations of origin, and any other mark, dress, word, term, name, symbol, or device that is confusingly similar to Plaintiff's Mark;

      F.      That Defendants be ordered to pay damages to Plaintiff as a result of Defendants' unlawful acts complained of herein, including without limitation lost profits, in an amount to be determined by this Court, upon proof presented, and that said damages be enhanced as permitted by law;

      G.      That Defendants be ordered to account for and pay over to Plaintiff all profits realized by Defendants from the unlawful acts complained of herein;

      H.      That Defendants be ordered to pay Plaintiff's attorneys' fees and costs for this action pursuant to the Lanham Act;

      I.      That Defendants be required to pay prejudgment and post-judgment interest until such awards are paid; and

      J.      That Plaintiff be granted such other and further relief as shown to be just and proper to the Court.

**DEMAND FOR JURY**:

**Pursuant to FRCP Rule 38(b), Plaintiff demands a jury on all claims and issues so triable.**

DATED: June 17, 2020              **PETERSON WATTS LAW GROUP, LLP**

                                       By:     /s/ GLENN W. PETERSON
                                                  GLENN W. PETERSON

                                       Attorneys for Plaintiff, Sourdough & Co., Inc.

**COMPLAINT FOR TRADEMARK INFRINGMENT**